# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

**June 9, 2014**

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**SAMIA MORRISON,**
**Claimant Below, Petitioner**

**vs.)  No. 13-0061** (BOR Appeal No. 2047430)
                    (Claim No. 2011028377)

**COMMUNITY ACTION OF**
**SOUTHEASTERN WEST VIRGINIA, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Samia Morrison, by Gregory Prudich, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Community Action of Southeastern West Virginia, Inc., by Marion Ray, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated December 18, 2012, in which the Board affirmed a July 13, 2012, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's March 18, 2011, decision which rejected the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon material misstatements and mischaracterizations of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Ms. Morrison, a teacher associate, alleges she injured her left knee in the course of her employment when she was taking out the garbage, tripped in a hole, twisted, and fell on September 10, 2010. Ms. Morrison has a history of left knee pain, injury, and surgery. She underwent surgery in 2001 in order to treat a medial and lateral meniscus tear. In 2006, an MRI showed an extensive horizontal tear in the lateral compartment. It also revealed a small focal tear of the posterior horn of the medial meniscus. Stephen O'Saile, D.O., an orthopedic surgeon,

performed surgery to treat the injury in 2007. Ms. Morrison experienced some pain after the surgery that was improved by left knee injections. When she tripped in the course of her employment, she was still experiencing occasional swelling and pain in her left knee but not to the extent that it interfered with her daily life or employment duties.

Ms. Morrison immediately reported her work-related accident to a co-worker. Three days later, she filed an accident report with her employer. Ms. Morrison testified in a deposition on August 29, 2011, that she did not immediately seek medical treatment because she thought that her knee may heal on its own. She experienced pain immediately after she fell but it dissipated over the weekend. She stated that her knee pain and swelling gradually worsened over the following five months. When her knee began to lock up, interfering with her ability to walk, she sought medical treatment. Dr. O'Saile's February 22, 2011, treatment note indicates Ms. Morrison fell in the course of her employment and injured her knee on September 10, 2010. She underwent an MRI on March 28, 2011, that revealed a posterior horn lateral meniscus tear that was new as compared to a September of 2006 MRI. The MRI also revealed a suspected anterior cruciate ligament tear as well as osteoarthritis. Dr. O'Saile diagnosed a lateral posterior horn meniscus tear and a partial anterior cruciate ligament tear and noted that Ms. Morrison would be scheduled for surgery.

Dr. O'Saile testified in a deposition on July 27, 2011, that he specializes in orthopedic surgery and has treated Ms. Morrison since approximately 2006. He stated that he diagnosed osteoarthritis following her 2007 surgery. After Ms. Morrison's 2007 surgery, she underwent three injections in her left knee and by March of 2008 her knee was much improved and she had full range of motion. Dr. O'Saile asserted that the lateral meniscal tear found in March of 2011 is a new tear and is completely separate from the repaired 2007 tear. He clarified that the tear is located in a completely different area of the meniscus than the previous tear and is more likely the result of the work-related injury, not degenerative changes. Dr. O'Saile noted that there are indications of an anterior cruciate ligament tear and that Ms. Morrison has never had any problems with, or injuries to, that ligament.

Paul Bachwitt, M.D., disagreed with Dr. O'Saile in his July 26, 2012, record review. He opined that the claimant's condition is pre-existing and not the result of the allegedly work-related injury. He noted a history of left knee pain, problems, and surgeries. He also noted that the claimant failed to seek medical treatment until February of 2011 and failed to file for workers' compensation benefits until March of 2011.

The claims administrator rejected the claim on March 18, 2011. The Office of Judges affirmed the decision in its July 13, 2012, Order. It found that the evidence shows that Ms. Morrison had pre-existing left knee problems. She delayed seeking treatment or filing for benefits for five to six months after the injury allegedly occurred. During that time period, she was treated on three separate occasions for unrelated issues and failed to mention a work-related knee injury during those visits. It was concluded that Ms. Morrison failed to explain why she did not immediately seek medical treatment. The Office of Judges determined that though the March 28, 2011, MRI showed some new meniscus tears, those problems are more likely the result of a progression of her prior problems. Dr. Bachwitt's opinion was found to be persuasive. The

Office of Judges held that Ms. Morrison failed to meet her burden of proof to establish that she sustained an injury in the course of and resulting from her employment. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order in its December 18, 2012, decision.

The Office of Judges' Order is based upon misstatements and mischaracterizations of the evidentiary record. Three elements must co-exist in order for a claim to be held compensable. There must be a personal injury, received in the course of employment, and resulting from that employment. *Barnett v. State Workmen's Compensation Comm'r*, 152 W.Va. 796, 172 S.E.2d 698 (1970). In this case, Ms. Morrison asserts that she tripped and fell while taking out the garbage at work. She reported the injury to a co-worker immediately after it occurred and filed an accident report three days later. The Office of Judges placed great emphasis on the fact that Ms. Morrison did not seek treatment or apply for workers' compensation benefits until five or six months after her alleged injury. The Office of Judges noted that she visited two doctors between her injury in September of 2010 and when she sought treatment for her knee in February of 2011. The Office of Judges stated that Ms. Morrison failed to explain why she did not seek treatment until February of 2011. That is incorrect because Ms. Morrison testified in a deposition that she did not seek treatment for her knee until February of 2011 because she believed it may heal on its own. She stated that the pain and swelling was intermittent and that it gradually increased over time. She sought treatment in February of 2011 because her knee began to lock and interfere with her ability to walk. Ms. Morrison has consistently maintained that she injured her left knee in the course of her employment on September 10, 2010. There is no evidence in the record to contradict her assertion. She filed for workers' compensation benefits within the statutorily prescribed time limits and has adequately explained her delay in seeking treatment and applying for benefits.

The Office of Judges relied on the opinion of Dr. Bachwitt to determine that Ms. Morrison did not sustain an injury in the course of her employment. He opined in a physician review that her current condition is the result of prior injuries, surgeries, and pre-existing degenerative changes. Dr. Bachwitt failed to rebut Dr. O'Saile's contention that the meniscus tear was a completely separate injury from her previous meniscal injury. Ms. Morrison previously underwent surgery to treat a medial meniscus tear of the posterior horn. She currently suffers from a lateral meniscus tear of the posterior horn. These are two separate areas of the meniscus, as Dr. O'Saile asserts. Dr. Bachwitt also failed to explain how Ms. Morrison's anterior cruciate ligament tear was not causally connected to her work-related injury given that she had no previous anterior cruciate ligament injury.

The Office of Judges relied heavily upon Ms. Morrison's pre-existing meniscal injuries to conclude that she has sustained no new work-related injury. The Office of Judges stated that though an MRI showed some new meniscus tears, the injuries were likely attributable to a progression of her prior problems. The Office of Judges failed to address Dr. O'Saile's testimony that Ms. Morrison's current meniscal tears are new, located in a completely separate area than her previous meniscal tear, and unrelated to her previous injuries. The Office of Judges also failed to address his opinion that the tear was the result of the work-related injury in September

3

of 2010. The presence of pre-existing injuries or conditions does not preclude a claimant from sustaining an injury in the course of his or her employment.

Lastly, the Office of Judges failed to address the anterior cruciate ligament tear. It determined that Ms. Morrison had pre-existing left knee problems but failed to acknowledge that those problems were limited to the meniscus and did not in any way involve the anterior cruciate ligament. Ms. Morrison had no previous injury or trauma to her anterior cruciate ligament. The tear cannot therefore be the result of a progression of a previous non-compensable condition.

For the foregoing reasons, we find that the decision of the Board of Review is based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is reversed and remanded with instructions to hold the claim compensable for a tear of the posterior horn of the lateral meniscus and a tear of the anterior cruciate ligament.

Reversed and Remanded.

**ISSUED:   June 9, 2014**

**CONCURRED IN BY:**
Chief Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4